# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

DAVID GOODMAN,

    Plaintiff,

vs.

PERFORMANCE CONTRACTORS, INC., and DEREK RACCA,

    Defendants.

No. C 17-4062-MWB

**OPINION AND ORDER REGARDING DEFENDANT RACCA'S MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION.................................................................................. 2*
   *A.  The Amended Complaint ........................................................... 2*
   *B.  The Motion To Dismiss.............................................................. 4*
*II. LEGAL ANALYSIS ............................................................................. 6*
   *A.  Standards For A Rule 12(b)(6) Motion To Dismiss ......................... 6*
   *B.  Discussion................................................................................ 8*
      *1.  Materials properly before the court ..................................... 8*
      *2.  Lack of a cognizable legal theory of "publication".................. 9*
      *3.  Insufficient pleading of other elements of "defamation"....................................................................... 14*
*III. CONCLUSION ................................................................................ 16*

Do a co-worker's intra-corporate statements about the plaintiff made only to their employer satisfy the "publication" element of defamation under Iowa law? The co-worker says no, but the plaintiff argues that the Iowa Court of Appeals, the state's intermediate court of appeals, has rejected the co-worker's argument, ruling that the intra-corporate nature of statements goes to qualified privilege, not "publication." I must decide whether the plaintiff's defamation claim survives a motion to dismiss for failure to state a claim.

## I.     INTRODUCTION
### A.     *The Amended Complaint*

Plaintiff David Goodman originally filed this action on August 22, 2017, in the Iowa District Court for Woodbury County, against his former employer, Performance Contractors, Inc., and two former co-workers, Derek Racca and Kelly Pabst. On October 6, 2017, Performance removed the action to this federal court on the basis of diversity jurisdiction prior to service on Racca or Pabst. On January 23, 2018, Goodman filed an Amended Complaint asserting state race discrimination and retaliation claims against Performance and Pabst, federal discrimination, harassment, and retaliation claims against Performance, and a defamation claim against Performance, Pabst, and Racca.[1] Because only the defamation claim is at issue on Racca's Motion To Dismiss, which is now before me, I will focus on that claim.

Apart from an introductory allegation that Racca is a citizen of Louisiana who, at all material times, lived and worked in Sergeant Bluff, Iowa, Racca is only mentioned

---

[1] On February 2, 2018, Goodman voluntarily dismissed Kelly Pabst from this action without prejudice, apparently without having been able to effect serve on Pabst.

individually in Count II of Goodman's Amended Complaint asserting Goodman's "Defamation" claim. The allegations in that Count, in their entirety, are as follows:

> 45. Mr. Goodman re-alleges paragraphs 1 through 44 as if fully set forth herein.
>
> 46. In the course of their work for Defendant Performance Contractors, Inc., Defendants Kelly Pabst and Derek Racca stated that Mr. Goodman threatened to commit violent crimes including a mass shooting.
>
> 47. Defendant Kelly Pabst stated that Mr. Goodman had "mentioned numerous time [sic] when he had enough he was coming in shooting [and] was going to make world news."
>
> 48. Defendant Derek Racca stated that Mr. Goodman had "threatened to come to the CF Port Neal expansion project and 'shoot it up' and kill those that don't like him or piss him off."
>
> 49. Defendant Derek Racca also stated Mr. Goodman said he "was going to take a bat and wrap it in barbwire and beat his wife."
>
> 50. Defendants' statements about Mr. Goodman were defamatory per se.
>
> 51. Defendants' statements about Mr. Goodman were made with knowledge that they were false or with reckless disregard for their truth or falsity.
>
> 52. Defendants acted intentionally, maliciously and/or with reckless indifference to Mr. Goodman's rights and knew or should have known that their actions were illegal; therefore, Mr. Goodman is entitled to punitive damages.
>
> 53. As a proximate cause of Defendants' statements, Plaintiff has been damaged. Specifically, he has suffered lost wages, emotional and mental anguish, humiliation, embarrassment, and loss of enjoyment of life.

Amended Complaint, ¶¶ 45-53.[2]

### B.  *The Motion To Dismiss*

On March 16, 2018, Racca filed the Motion To Dismiss now before me, asserting that Goodman does not, and cannot, state a plausible claim for defamation against him. Racca argues that Goodman's defamation claim is based solely on statements that Racca made in an Employee Statement submitted to Performance in the course of Racca's work for Performance and that there are no allegations that Racca communicated any allegedly defamatory statement to a person other than Performance or outside of his employment with Performance.  Racca argues that, while Iowa courts do not appear to have directly decided whether such intra-corporate statements constitute "publication" of the defamation, other jurisdictions have specifically found that intra-corporate communications, like Racca's Employee Statement, do not, as a matter of law, constitute publication to a third party.  Racca also argues that Goodman's "threadbare" recitals of the remaining elements of his defamation claim—which he identifies as intent, malice, and harm—do not identify the facts supporting them, so that such conclusory allegations also warrant dismissal, but he argues that the court need not reach that issue.  Racca appended his Employee Statement as an exhibit to his Motion To Dismiss, and he argues that the court may properly consider it on his Rule 12(b)(6) Motion, because it is embraced by the pleadings.

---

[2] In the "WHEREFORE" paragraph of this Count, Goodman prays for the court to "enter judgment against Defendants, jointly and severally, and award damages which will fully and fairly compensate him for his injuries and damages, including damages for lost wages, emotional distress, mental anguish, compensatory relief, punitive damages and court costs, with interest as provided by law, and such other and further relief as the Court deems just and equitable under the circumstances."

Goodman filed his Resistance on March 30, 2018. Goodman argues that, in *Newell v. JDS Holdings, L.L.C.*, 834 N.W.2d 463, 470 (Iowa Ct. App. 2013), the Iowa Court of Appeals rejected the argument that there was no "publication" of allegedly defamatory statements that were made by a supervisory employee to individuals within the company and noted that the argument presented the minority view among the states. Indeed, Goodman argues, the Iowa Court of Appeals thoroughly analyzed the position Racca urges but rejected an intra-corporate communication exception to "publication," because the court concluded that the intra-corporate nature of the communication was properly addressed in the context of a qualified privilege. Goodman also argues that he has adequately pleaded the other elements of his defamation claim against Racca, because he alleges that the statements attributed to Racca were untrue, creating a reasonable inference that Racca made the statements with intent and malice. He also argues that the content of the statements constitutes *per se* defamation, so that falsity, malice, and injury are presumed.

Racca filed a Reply on April 5, 2018. In his Reply, Racca argues that Goodman has not disputed that the court may consider his Employee Statement as a document embraced by the pleadings. Racca also argues that *Newell* is not "controlling," merely "persuasive," because it is a decision by an intermediate court of appeals. Also, the *Newell* decision is not the best evidence of state law, Racca contends, because the Iowa Supreme Court actually expressed support for the theory that intra-company communications do not constitute publication in *Taggart v. Drake University*, 549 N.W.2d 796, 802-03 (Iowa 1996). Racca argues that Goodman's position would invite disgruntled employees to sue co-workers individually for defamation, which would discourage co-workers from reporting legitimate concerns about workplace threats or participating in investigations. Racca argues that, had the Iowa Court of Appeals been presented with the Amended Complaint in this case, it might well have reached a different

5

conclusion than it did in *Newell*, because Racca was Goodman's co-worker, not his supervisor.

I conclude that oral arguments on Racca's Motion are not likely to be of benefit, so I deem the Motion fully submitted on the parties' written submissions.

## II.  LEGAL ANALYSIS
### A.  Standards For A Rule 12(b)(6) Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[3] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *accord Whitney*, 700 F.3d at 1128 (stating the same standards).

---

[3] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); C*ommonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

With these standards in mind, I turn to consideration of Racca's Motion To Dismiss.

### B. *Discussion*
#### 1. *Materials properly before the court*

Racca argues that I may properly consider his Employee Statement on his Rule 12(b)(6) Motion, because it is embraced by Goodman's pleadings. In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d

at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Here, Goodman does not dispute that I may consider Racca's Employee Statement. Moreover, I conclude that the Employee Statement is "necessarily embraced by the pleadings." *Whitney*, 700 F.3d at 1128 (quotation marks and citation omitted). Where the source of the allegedly defamatory statements is Racca's Employee Statement, that Statement is "integral to the claim," and Goodman has not challenged the authenticity of the copy attached to Racca's Motion. *Miller*, 688 F.3d at 931 n.3 (quotation marks and citation omitted). Therefore, I will consider the Employee Statement in my disposition of Racca's Motion To Dismiss.

### 2. *Lack of a cognizable legal theory of "publication"*

The main thrust of Racca's Motion To Dismiss is that a co-worker's allegedly defamatory statements to an employer do not constitute "publication" of the defamation as a matter of Iowa law. Thus, Racca challenges Goodman's defamation claim as lacking a cognizable legal theory. *Brown*, 738 F.3d at 933 n.7, 934 (recognizing that dismissal is proper if the facts pleaded do not state a cognizable claim under state law).

9

In support of his argument, Racca relies primarily on decisions of a Louisiana state court and the Eleventh and the Ninth Circuit Courts of Appeals. I look to Iowa decisions first, however, as far more likely to be probative of whether, under Iowa law, intra-corporate communications satisfy or are an exception to the "publication" element of defamation. As the parties' arguments ultimately indicate, at the center of that question is the decision of the Iowa Court of Appeals in *Newell v. JDS Holdings, L.L.C.*, 834 N.W.2d 463, 470 (Iowa Ct. App. 2013).[4]

In Newell, the court recognized,

> Publication, or the communication of statements to one or more third parties, is also an essential element of defamation. [*Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). The publication must reach beyond the person being defamed. *Id*. If a statement is not heard and understood by a third person to be defamatory, the defamatory statement is not published and is therefore not actionable. *Id*.

*Newell*, 834 N.W.2d at 470. The requirement of "publication to one or more third parties" as an essential element of "defamation" is a well-recognized requirement of Iowa law. As the Iowa Supreme Court has explained, "In an ordinary case, a plaintiff establishes a prima facie claim for defamation by showing the defendant '(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)); *Bierman v. Weier*, 826 N.W.2d 436, 464 (Iowa 2013) (explaining that, in addition to reputational damage, "[t]o

---

[4] Racca did not cite *Newell* in his opening brief in support of his Motion To Dismiss. After Goodman accused Racca of "ignoring" that decision, on which Goodman extensively relies in his Resistance, Racca argued in his Reply that he did not simply ignore *Newell*, but recognized that it was only "persuasive" and that Goodman had overstated the impact of *Newell* on the question presented.

establish a prima facie case in any defamat[ion] action, a plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff," and also explaining that "[p]ublication . . . simply means a communication of statements to one or more third persons" (internal quotation marks and citations omitted)).

In *Newell*, the corporate defendant challenged whether the plaintiff's supervisor's statements made within the company were "published." *Id*. The court noted,

> Some jurisdictions hold intra-office defamation "is simply the corporation talking to itself," and therefore does not qualify as publication to a third party. *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802–03 (Iowa 1996). Other jurisdictions hold communications between supervisory employees of a corporation regarding another employee may be qualifiedly privileged, but are still considered publications. *Id*. at 803. Our supreme court has not embraced either position, leaving the issue unresolved in *Taggart* because it found the plaintiff could not succeed under either view. *Id*. at 802–03.

*Newell*, 834 N.W.2d at 470–71. The Iowa Supreme Court went on to observe that "[t]hose jurisdictions which do not recognize internal corporate communications as publication to a third party represent the minority position," while "[t]he 'contemporary view' is that intra-office communications do count as publications, but are protected by a qualified privilege, which allows an employee to recover only if the employer abuses the privilege." *Id*. at 471. The court noted that the defamation claim before it was not against the corporate defendant, but against the individual supervisor who had allegedly defamed the plaintiff to a third party, the company owner, which resulted in her termination. *Id*. at 472. The court then concluded as follows:

> To exempt this type of communication from liability because the plaintiff's supervisor only shared it with the company owner would run counter to the purpose of our defamation law. "A defamatory statement made to one's employer can harm one's business reputation with the employer, whether

11

> the defamer is a co-worker or is instead removed from the employment relationship." *Wallulis v. Dymowski*, 323 Or. 337, 918 P.2d 755, 760 (1996). Instead, we find a qualified privilege applies to this type of communication.

*Newell*, 834 N.W.2d at 472. The court then explored what the defendant must prove to establish the qualified privilege and concluded that the applicability of the privilege in that case was subject to genuine issues of material fact. *Id*. at 472-74.

Thus, contrary to Racca's contentions, the only Iowa state appellate court to confront the question squarely held that a defamatory statement made by a co-worker to one's employer constitutes "publication," although the statements may be subject to a qualified privilege. *Id*. Racca argues that this decision, nevertheless, is not the best evidence of Iowa law, because it is only a decision of an intermediate appellate court. Racca is correct that, in *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711 (N.D. Iowa 2005), *modified*, 411 F. Supp. 2d 1080 (N.D. Iowa 2006), I recognized that interpretations of state law in cases decided by a state intermediate appellate court, although persuasive, do not bind this federal court as precedent. 374 F. Supp. 2d at 730 and n.8 (citing decisions of the Eighth Circuit Court of Appeals and other federal Circuit Courts of Appeals so holding). Racca argues that the Iowa Supreme Court's decision in *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802–03 (Iowa 1996), is more persuasive.

In *Taggart*, the Iowa Supreme Court explained that "[t]he trial court held that intra-university communications between administrators and tenured faculty members, sitting as a faculty committee, were not 'published' for purposes of defamation law." 549 N.W.2d at 802. The court noted, "We have not ruled on the point, and authorities from other jurisdictions are in conflict," where "[o]ne line of analogous cases reasons that intra-office defamation is simply the corporation talking to itself, and thus does not amount to publication," while "[t]he other line of analogous cases holds that, although communications between supervisory employees of a corporation regarding another

12

employee may be qualifiedly privileged, they are still considered publication." *Id.* at 802-03. The court then explained,

> There is logical support for both views. The first is more consistent with the wise reluctance of courts to intrude into faculty matters. The second is a reasonable recognition that, because professional careers hang in the balance, there should be a chance for judicial oversight in extreme cases in which the damaging statements proceed from malice rather than from professional considerations.
>
> We need not and do not opt for either line of cases because plaintiff loses either way. If the documents were not published, there was no defamation. If we were to agree with the second view, plaintiff loses because the documents were protected by qualified privilege.

*Taggart*, 549 N.W.2d at 803.

Contrary to Racca's characterization, in *Taggart*, the Iowa Supreme Court did not actually express support for the theory that intra-company communications do not constitute publication, at least not more support for that position than for the contrary. Rather, the court simply recognized "[t]here is logical support for both views," but did not decide the question. *Id*. The Iowa Supreme Court's decision in *Taggart* clearly does not support the contention that intra-company or intra-corporate communications by a co-worker only to the employer are not "publications" as a matter of Iowa law for purposes of a defamation claim. In contrast, the decision of the Iowa Court of Appeals in *Newell* is persuasive authority—indeed, in the circumstances where the intermediate appellate court considered the question in detail, highly persuasive authority—that Iowa does consider allegedly defamatory statements by co-workers to the employer to be "published." *Pro Edge, L.P.*, 374 F. Supp. 2d at 730.

Therefore, the question is settled *against* Racca or, at the very least, remains an *unsettled* question of Iowa law. In such circumstances, I cannot conclude that the facts

pleaded about how and to whom Racca's allegedly defamatory statements were published do not state a cognizable defamation claim under Iowa law; thus, dismissal pursuant to Rule 12(b)(6) on this ground is not appropriate. *Compare Brown*, 738 F.3d at 933 n.7, 934 (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

### 3. *Insufficient pleading of other elements of "defamation"*

As a fallback position, Racca argues that Goodman's "threadbare" recitals of the remaining elements of his defamation claim—which he identifies as intent, malice, and harm—do not identify the facts supporting them, so that such conclusory allegations also warrant dismissal. He hastens to add, however, that the court need not reach that issue. Goodman argues that the content of the statements constitutes *per se* defamation, so that falsity, malice, and injury are presumed, but even if he must adequately allege and ultimately prove those elements, he has alleged that the statements were untrue, creating a reasonable inference that Racca made the statements with intent and malice and that the statements resulted in injury, which he alleges consisted of lost wages, emotional and mental anguish, humiliation, embarrassment, and loss of enjoyment of life.

In this case, involving a non-public figure plaintiff, a private matter, and non-media defendants, to succeed on a defamation claim, a plaintiff must ordinarily prove the following elements: "(1) publication, (2) of a defamatory statement, (3) which was false and (4) malicious, (5) made of and concerning the plaintiff, (6) which caused injury." *Bierman*, 826 N.W.2d at 443. However, "a nonmedia defendant is subject to presumptions of damages, falsity, and malice if a traditional case of defamation per se has been established." *Id*. at 448 (refusing to abandon "libel per se" and require all

defamation plaintiffs to prove falsity, malice, and damages to reputation). Statements are defamatory *per se*, if they "have 'a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule.'" *Id*. (quoting *Nickerson*, 542 N.W.2d at 510). Such statements include "[a]ccusations of indictable crimes of moral turpitude," including drug possession, and "accusations of immorality or dishonesty," *id*. at 464, accusations of other indictable crimes subjecting a person to a sentence of incarceration, *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996), as well as imputations of loathsome diseases, *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). Also, where a plaintiff rests a defamation claim on defamation *per se*, a defendant is not entitled to dictate that the claim also be submitted on a defamation *per quod* theory. *Kiesau v. Bantz*, 686 N.W.2d 164, 176 (Iowa 2004), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016).

Here, Goodman alleges that the statements in question "were defamatory per se." Amended Complaint, ¶ 50. "'If a statement is clear and unambiguous, the issue of whether the statement is [defamatory] per se is for the court.'" *Bierman*, 826 N.W.2d at 464 (quoting *Kiesau*, 686 N.W.2d at 175). Here, the statements attributed to Racca are that "Mr. Goodman threatened to commit violent crimes including a mass shooting"; that "Mr. Goodman had 'threatened to come to the CF Port Neal expansion project and "shoot it up" and kill those that don't like him or piss him off'"; and that "Mr. Goodman said he 'was going to take a bat and wrap it in barbwire and beat his wife.'" Not only do these statements accuse Goodman of indictable crimes that would subject him to a sentence of incarceration, *see Huegerich*, 547 N.W.2d at 221, more broadly, they plainly have "a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule." *Bierman*, 826 N.W.2d at 448 (internal quotation marks and citation omitted). Thus, Goodman was not required to prove—and hence, does not have to allege a plausible factual basis for—damages, falsity, and malice. *Id*.

15

Because Goodman has adequately pleaded defamation *per se*, so that Racca is not entitled to dismissal of the claim, I do not reach the question of whether he adequately pleaded a plausible factual basis for damages, falsity, or malice.

### III.   CONCLUSION

Upon the foregoing, defendant Racca's March 16, 2018, Motion To Dismiss (docket no. 33) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 11th day of April, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA